# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:08-CV-539-RLV-DCK

| | |
|---|---|
| IKON OFFICE SOLUTIONS, INC., | ) |
| Plaintiff, | ) ORDER |
| v. | ) |
| KONICA MINOLTA BUSINESS SOLUTIONS, U.S.A., INC., et al, | ) |
| Defendants. | ) |

**THIS MATTER IS BEFORE THE COURT** on the parties' cross-motions, specifically the "Motion to Compel Discovery Responses and for a Protective Order" (Document No. 31) filed by Konica Minolta Business Solutions USA, Inc. ("Defendant" or "Minolta") and the "Motion to Compel Discovery" (Document No. 33) filed by Ikon Office Solutions, Inc. ("Plaintiff" or "IKON"). The motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are ripe for consideration. Having fully considered the record, including the pleadings, the parties' briefs, and exhibits (Document No. 31-34, 38, 40, 41, 44), the undersigned will **grant** the Defendant's motion and **deny** the Plaintiff's motion, for the following reasons:

## I. Background

Plaintiff IKON sells, leases, services, and provides related services for office equipment systems. Defendant William Cimler ("Cimler") worked for IKON as a "Color Solutions Specialist" based in Charlotte, North Carolina, and signed a "Confidentiality and Non-Compete Agreement" with IKON on May 13, 2002. Under the terms this contract, he agreed 1) to not work for an IKON competitor in "[a]ny area or account assigned" to him during his last two years at IKON; 2) to not

solicit or accept business from any of IKON's "present or prospective customers;" and 3) and to not cause any IKON customer to reduce its business with IKON. (Document No. 1, ¶ 37). These terms were to apply for 18 months after he left IKON. Cimler left employment at IKON on December 1, 2006, and eventually began working for Defendant Minolta, a competitor of IKON, on February 19, 2008 (a few months shy of the 18 month period).

IKON filed this action on November 25, 2008, alleging breach of contract, misappropriation of trade secrets, unfair competition, interference with actual and prospective business advantage, interference with contractual relations, negligent interference with contractual relations, and civil conspiracy. Essentially, IKON alleges that Cimler "had access" to IKON's confidential sales materials, and then, before the 18 month non-compete period expired, went to work for a competitor, Minolta. (Document No. 1, ¶¶ 14, 16, 18, 44). IKON fears that Cimler may have used confidential information to compete against IKON and seeks a large amount of discovery, including Minolta's own confidential sales information on this basis, regardless of whether the information has any relation to the claims and defenses in this action. IKON's Complaint only refers to two unidentified customers that Cimler allegedly solicited. (*Id*., ¶¶ 44, 46). The Complaint seeks both injunctive and monetary relief, but Plaintiff has not sought a preliminary injunction.

Both parties have served discovery requests and responses. Both parties seek to compel the other to "fully respond." Defendant Minolta also seeks a protective order and asks that IKON first specify the trade secrets allegedly misappropriated. The parties indicate they have not scheduled further depositions pending the resolution of the motions to compel, in order to avoid recall of witnesses after document discovery.

## II. Applicable Authority

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection if a party fails to respond that inspection will be permitted--or fails to permit inspection--as requested under Rule 34.[1] Fed.R.Civ.P. 37(a)(3)(B)(iv). Whether to grant or deny a motion to compel discovery is left to the trial court's broad discretion. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995); *Erdmann v. Preferred Research Inc.*, 852 F.2d 788, 792 (4th Cir. 1988).

The federal rules are interpreted liberally to allow very broad discovery. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964). However, a party is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or oppress an opposing party. Fed.R.Civ.P. 26(c). Courts must strike a balance between the broad scope permitted by the civil rules and the requirement that such discovery be relevant. *Hickman v. Taylor,* 329 U.S. 495, 507 (1947) (observing that the civil rules are given a "broad and liberal treatment" but that "discovery, like all matters of procedure, has ultimate and necessary boundaries").

Rule 26(c) provides that: "Upon motion by a party or by the person from whom discovery

---

[1] Rule 34 requires that the "party to whom the request is directed must respond in writing within 30 days after being served." Fed.R.Civ.P. 34(b)(2)(A).

is sought, and for good cause shown, the court....may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c)(1)(G) specifically addresses trade secrets and provides that for good cause shown, a court may enter a protective order requiring that a trade secret or other confidential and/or commercial information not be revealed or be revealed only in a designated way. *See In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998) (the movant must establish that the information sought is covered by the rule and that it will be harmed by disclosure, and the party seeking discovery must then establish that the information is sufficiently necessary and relevant to the case to outweigh the harm of disclosure).

The burden is on the moving party to establish good cause. *Seattle Times Co. v. Rhinehart*, 104 S.Ct. 2199 (1984). The party seeking the protective order must make a specific demonstration of facts as opposed to conclusory or speculative statements about the need for a protective order and the harm which would be suffered without one. *Gulf Oil v. Bernard,* 452 U.S. 89, 102 n. 16 (1981); *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 412 (M.D.N.C. 1991).

### III. Discussion

Upon review of the lengthy briefs and respective discovery responses, several problems are readily apparent: 1) IKON initiated this action and has referred to a mountain of information as "trade secrets," but has refused to specifically identify its alleged trade secrets or any specific customers allegedly solicited by Cimler; 2) despite this, the briefs suggest (without confirming) that IKON's "trade secret" actually at issue here is a large collection of sales/customer information referred to generally as the "Carolinas Lease-End Portfolio;" 3) the parties are engaged in a "who goes first" battle; 4) IKON's requests for documents and interrogatories are overly broad and seek its competitor's confidential information; 5) Minolta's requests for documents are also overly broad; and

6) IKON has provided some documents so heavily redacted as to be useless. The undersigned observes that the federal rules anticipate that the parties will conduct discovery in good faith, will not seek discovery for improper purposes, will not engage in delay tactics, and will confer in good faith to resolve disputes. That said, the undersigned will address the present discovery "log-jam."

### A. Minolta's Motion to Compel and for Protective Order

Turning to the motions at hand, Minolta moves pursuant to Rule 37(a) for an order compelling IKON to respond fully to the "First Requests for Production of Documents and First Set of Interrogatories directed to IKON." These interrogatories reasonably ask what trade secrets were allegedly misappropriated and seek information about the surrounding circumstances, any documents, and any witnesses. Although such information is relevant and discoverable, IKON has provided inadequate responses to Interrogatory Nos. 1-11, and has completely refused to respond to Interrogatory Nos. 12-20. (See Document No. 32-3, IKON Responses).[2]

For example, although Interrogatory #1 asks IKON for specific information about each trade secret allegedly misappropriated, IKON merely refers to unspecified "reports containing lease-end information" and refers Minolta to the Complaint, which contains a laundry list of general categories of alleged "trade secret" information. (See Document No. 1, ¶¶ 19-27).[3] IKON refused to provide any underlying facts or to identify any customers who were allegedly solicited by Cimler. When

---

[2]Although IKON contends that Minolta has exceeded the allowable number of twenty single interrogatories, Minolta only asked twenty questions in appropriate form.

[3]The Complaint alleges that "[i]n connection with the development of its business, IKON has expended substantial time, labor and money to research and develop skills, methods, techniques, plans, programs, processes, data, and forms which, singularly and collectively, constitute trade secrets and confidential information belonging to IKON." (*Id*. ¶ 19). Lengthy descriptive, but non-specific, paragraphs follow in the Complaint.

asked to identify witnesses with knowledge of the alleged misappropriation, IKON referred to one former IKON employee, who according to Minolta, has stated repeatedly at deposition that she has no knowledge of any misappropriation of trade secrets.[4]

Minolta points out that Cimler's "non-compete agreement" expired 3½ months after he began working for Minolta and only prohibited him from soliciting business from customers assigned to him during the last two years of his employment with IKON. Minolta reasonably suggests that "the place to start would be with a list of those IKON accounts and locations actually assigned to Cimler. (Document No. 40, p. 2). IKON initially refused to provide this list, but subsequently provided a list of over 3000 customers, including those assigned to other account representatives and without any locations given. Location is relevant because Cimler's agreement only pertained to North and South Carolina. (Document No. 40, p. 2, fn. 1). In responding to this discovery, Plaintiff shall identify which of these 3000 customers, within North and South Carolina, Cimler allegedly solicited and/or sold to before expiration of his non-compete agreement on June 1, 2008.

IKON's responses to the Requests for Production of Documents were no better, although many of these requests were quite broad. For example, in response to Requests #1 and 2 which asked for "all" documents referring to the allegedly misappropriated trade secrets, IKON merely supplied some "representative" samples" of the "type of reports" allegedly misappropriated. The few samples were heavily redacted and contained no customer names or other identifying information, no product category, and no "lease-end" dates. IKON even objected that providing employee handbooks for

---

[4]This contrasts sharply with Minolta's substantive response, where Minolta provides names, addresses, and descriptions of knowledge, for at least six witnesses. (See Document No. 32-7, Minolta Responses). Even Minolta's objections were explained at considerable length and detail.

2002-2006 would be "burdensome" and that providing documents relating to the amount of damages sought by IKON was "overbroad." (Document No. 32-3, IKON Responses #5, 12). Although IKON need not have produced the entire collection of data for the "Carolinas Portfolio," well-settled case law indicates that it must specifically identify the actual trade secrets allegedly misappropriated.

Pursuant to Rule 26(c), Minolta seeks a protective order so that it need not furnish information about its own trade secrets and confidential proprietary information until after IKON describes with reasonable particularity the trade secrets it claims Defendants have misappropriated. A "plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets." *Automed Techs., Inc., v. Eller*, 160 F.Supp.2d 915, 926 (N.D. Ill. 2001); see also, *CardioVention, Inc. v. Medtronic, Inc.*, 483 F.Supp.2d 830, 844 (D.Minn. 2007) (ordering Plaintiff to "specify precisely what items of information constitute the trade secrets that Medtronic allegedly misappropriated" and to "submit a specific, clear, detailed, and precise list of the trade secrets at issue"); *Decision Insights, Inc. v. Sentia Group, Inc.*, 311 Fed.Appx. 586, 589-590, 2009 WL 367585, *2 (4th Cir. (Va.)) (magistrate judge directed Plaintiff to produce "a clear and express verified statement containing only those items which Plaintiff considers to be actual trade secrets and which Plaintiff has reasonable grounds to believe were misappropriated by Defendant"); *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 599-600 (D.Minn. 1999) (requiring plaintiff to provide "a list of its trade secrets upon which its allegations are based"); *Dura Global Technologies, Inc. v. Magna Donnelly, Corp.*, 2007 WL 4303294, *2 (E.D.Mich. 2007) (same). Moreover, requiring IKON to identify the allegedly misappropriated trade secrets will assist the Court in determining relevancy and the proper scope of discovery. *See Computer Econs., Inc. v. Gartner*

*Group, Inc.*, 50 F.Supp. 2d 980, 985 (S.D. Cal. 1999).

Additionally, under North Carolina's Trade Secrets Protection Act, N.C. Gen.Stat. §§ 66-152, *et seq.*, federal courts have required a party asserting a claim of trade secret misappropriation to "identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether a misappropriation has or is threatened to occur." *Silicon Knights, Inc. v. Epic Games, Inc.*, 2008 WL 2414046, *8 (E.D.N.C.) (quoting *Analog Devices, Inc. v. Michaelski*, 157 N.C.App. 462, 468 (2003)). IKON's "Second Count" in the Complaint is based on N.C. Gen.Stat. §§ 66-152, *et seq*.

Minolta points out that IKON is seeking confidential information regarding Minolta's customers, regardless of whether those customers have anything to do with IKON or this lawsuit. (See Document No. 32-7, Interrogatory #4). "Determining whether a trade secret has been misappropriated usually involves examining things that the other party considers its own trade secrets .... courts must exercise discretion to avoid unnecessary disclosures of such information." *Dura Global Technologies, Inc. v. Magna Donnelly, Corp.*, 2007 WL 4303294, 2 (E.D.Mich. 2007) (citing *Automed Techs., Inc. v. Eller*, 160 F.Supp.2d 915, 925 (N.D.Ill. 2001).

Courts have recognized an interest in the confidentiality of customer information and lists based on fears of predatory or harassing practices. *Drexel Heritage Furnishings, Inc. v. Furniture U.S.S.A., Inc.*, 200 F.R.D. 255, 259 fn.7 (M.D.N.C. 2001); *In re Independent Service Organizations Antitrust Litigation*, 162 F.R.D. 355 (D.Kan. 1995) (finding that confidential supplier list was trade secret, and possibility that plaintiff might discourage suppliers from doing business with defendants was found sufficient to show potential harm from disclosure); *Russ Stonier, Inc. v. Droz Wood Co.*, 52 F.R.D. 232 (E.D.Pa. 1971) (granting protective order to protect against possible harassment or

intimidation of defendant's customers and suppliers). Minolta has shown that the information sought is covered by the rule and that it will be harmed by disclosure. *In re Wilson*, 149 F.3d at 252. At this juncture, IKON has not established that this information is sufficiently necessary and relevant to the case to outweigh the harm of disclosure. Hence, Minolta is entitled to a protective order. *See, e.g., Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F.Supp. 635, 637 (D.C.Del.1991) (granting protective order and providing for initial discovery of plaintiff's specific trade secrets).

### B. IKON's Motion to Compel

Pursuant to Rule 37(a), Plaintiff IKON seeks an Order compelling Defendant Minolta to provide full and complete responses to its First Requests for Production of Documents and First Set of Interrogatories directed to Minolta. (Document No. 33). Although IKON insists that its discovery is a "narrow request for information concerning the customers of one of its employees" (Document No. 34), review of the discovery propounded by IKON reveals that it seeks, as Minolta puts it, virtually "the entire universe" of confidential, proprietary business information accumulated since Cimler began working at Minolta. (Document No. 40, p.2). In short, IKON's discovery requests are overly broad and burdensome.

Ample precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information, especially where a party might use the information to gain a competitive advantage. See, e.g., *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 1998 WL 186728, at *2 (E.D.La.) (collecting cases). The parties in the present case are direct competitors, and disclosure of customer and supplier lists could potentially result in economic harm and unnecessary burden to the disclosing party. *Id*. at 262, fn.9 (holding that plaintiffs would have to show actual counterfeit furniture prior to the Court permitting a fishing expedition into defendants' supplier lists); *Asch/Grossbardt Inc. v.*

*Asher Jewelry Co., Inc.* WL 660833, *2-3 (S.D.N.Y. 2003). Of course, IKON is free to submit more narrowly drawn document requests and interrogatories after it has sufficiently identified the trade secrets allegedly misappropriated.

**IT IS, THEREFORE, ORDERED** that:

1) Minolta's two-part "Motion to Compel Discovery Responses and for a Protective Order" (Document No. 31) is **GRANTED,** with one exception; IKON shall respond to Minolta's "First Set of Interrogatories directed to IKON" by December 11, 2009; IKON's objections to answering Interrogatories # 11-20 on the basis that Defendant exceeded the maximum number of interrogatories are **OVERRULED**; however, IKON need not respond to Minolta's "Requests for Production of Documents" at this time; Minolta is given leave to submit more specific requests; with respect to Minolta's request for protective order, Minolta need not respond further to IKON's "First Set of Interrogatories and Requests for Production of Documents directed to Minolta;" and

2) IKON's "Motion to Compel Discovery" (Document No. 33) is **DENIED**; Minolta's objections are **SUSTAINED;** after IKON responds to Minolta's "First Set of Interrogatories directed to IKON," IKON is given leave to serve its own more narrowly drawn discovery requests.

**IT IS SO ORDERED**.

Signed: November 25, 2009

David C. Keesler
United States Magistrate Judge